# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

FIRST FRANCHISE CAPITAL
CORPORATION,
     Plaintiff,

     v.

JACK IN THE BOX, INC., et al.,
     Defendants.

Case No. 1:17-cv-397
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

## I. Introduction

Plaintiff First Franchise Capital Corporation (FFCC) originally filed a verified complaint

against defendants Jack in the Box, Inc. (JITB) and Jack in the Box Eastern Division, LP (JITB

Eastern Division) in the Hamilton County, Ohio Court of Common Pleas on June 8, 2017. (Doc.

1-3). Defendants removed the action to this Court on June 12, 2017. (Doc. 1). Following

removal, this matter was referred to the undersigned magistrate judge. The Court established a

briefing schedule on plaintiff's pending motion for temporary restraining order (TRO) and

preliminary injunction (Doc. 4) and defendants' anticipated motion for change of venue and set

the motions for hearing on June 27, 2017. (6/13/17 docket entry). Defendants filed their motion

for change of venue on June 16, 2017. (Doc. 6).

The motion for TRO/preliminary injunction and motion for change of venue were fully

briefed prior to the hearing. Defendants raised the issue of whether the Court has personal

jurisdiction over them in connection with their motion for change of venue. The Court gave the

parties an opportunity to brief the personal jurisdiction issue following the hearing.

This matter is now before the Court on the following filings: (1) plaintiff's motion for

TRO/preliminary injunction (Doc. 4), defendants' response in opposition (Doc. 7), and plaintiff's

reply (Doc. 9); (2) defendants' motion to change venue (Doc. 6), plaintiff's response in

opposition (Doc. 8), and defendants' amended reply (Doc. 11); and (3) plaintiff's supplemental memorandum on personal jurisdiction (Doc. 13) and defendants' response in opposition to plaintiff's memorandum (Doc. 14).

## II. Allegations of the Verified Complaint

Plaintiff makes the following allegations in the Verified Complaint: Plaintiff FFCC is an Indiana corporation that is licensed to do business in Ohio and operates out of Hamilton County, Ohio, where its parent company is headquartered. (Doc. 3, ¶ 3). Defendant JITB is a Delaware corporation with its principal office in San Diego, California. (*Id*., ¶ 4). It operates and franchises Jack in the Box® restaurants throughout the United States, including in Hamilton County, Ohio. (*Id*.). Defendant JITB Eastern Division is a Texas limited partnership with its principal office in San Diego, California, which is licensed to do business in Ohio. (*Id*., ¶ 5). Personal jurisdiction over the defendants is premised on Ohio Rev. Code § 2307.382(A) on the theory the causes of action arise out of defendants' transacting business in Ohio, and causing tortious injury in Ohio by acts outside the State committed with the purpose of injuring individuals in the State. (*Id*., ¶ 7). FFCC alleges venue is appropriate in this Court because FFCC and defendants conducted business that is the subject of this dispute in Hamilton County, Ohio and FFCC sustained the alleged loss resulting from defendants' conduct in Hamilton County. (*Id*., ¶ 8).

FFCC is a lender that provides secured loans and mortgage financing to clients in the restaurant franchise industry to enable them to acquire equipment and real estate properties, remodel or reimage their stores, finance new construction, acquire existing stores, and refinance debt or restructure ownership. (*Id*., ¶ 9). In November 2013, FFCC began providing loans to J&D Restaurant Group, LLC (J&D), which J&D used to acquire, construct, refinance and

operate 31 Jack in the Box® franchise locations in 18 Texas cities (the Restaurants).  (*Id*., ¶ 10;

Exhs. A-E, Schedule A).  To obtain the loans from FFCC, J&D executed five secured

promissory notes payable to FFCC with accompanying security agreements.  (*Id*., ¶¶ 11, 12).

The first four notes and security agreements were executed on or about November 12, 2013

(Secured Notes 1, 2, 3, 4 and Security Agreements 1, 2, 3, 4) and J&D executed the fifth

promissory note and security agreement on or about May 15, 2014 (Secured Note 5 and Security

Agreement 5).  (*Id*.).[1]  According to the Verified Complaint, by the terms of the Security

Agreements, J&D granted FFCC a first priority lien on, and security interest in, "substantially all

of the personal property and fixtures of J&D, including, without limitation, (a) all intangible

personal property, including goodwill and general intangibles, and (b) all equipment and other

goods and other personal property of J&D maintained at, or for the use of or pertaining or

relating to, the Restaurants (the 'Collateral')."  (*Id*., ¶ 13).

     The Restaurants were the subject of franchise agreements that J&D executed with JITB.

(*Id*., ¶ 14).  On information and belief, the franchise agreements granted JITB a security interest

in certain assets of J&D that were used or useful in connection with J&D's acquisition,

construction, refinance, ownership and operation of the Restaurants, including the Collateral.

(*Id*., ¶ 15).  In order to induce FFCC to lend to J&D, and as consideration for the loans, JITB

agreed to subordinate its security interest in the Collateral.  (*Id*., ¶ 16).  JITB, J&D and FFCC

executed two Consent and Subordination Agreements on or about November 26, 2013 and May

30, 2014, respectively (Consent Agreement 1 and Consent Agreement 2), under which JITB

agreed that its security interest granted by J&D under their franchise agreements "shall be

subordinate to, and junior to, [FFCC's] security interest under the Security Agreement[s] to the

_____

[1] The Secured Notes and Security Agreements are attached to the Verified Complaint as Exhibits A through E.

extent" of FFCC's financing of J&D.[2]  (*Id*., ¶¶ 17, 18).  JITB promised "not to exercise or seek to exercise any rights or remedies (including by way of setoff) with respect to any Collateral" under ¶ 3 of the Consent Agreements.  (*Id*., ¶ 19).  JITB recognized that FFCC "shall have the exclusive right to enforce rights, exercise remedies . . . and make determinations regarding the release, disposition, or restrictions with respect to the Collateral without any consultation with or the consent of" JITB.  (*Id*.).  Paragraph 4 of the Consent Agreements required JITB to notify FFCC of each written notice of default JITB served on J&D relating to J&D's operation of the Restaurants.   (*Id*., ¶ 20).

The Restaurants were leased to J&D from JITB Eastern Division and were therefore subject to franchise lease agreements.  (*Id*., ¶ 21).  In order to induce FFCC to lend to J&D, and as consideration for the loans, JITB Eastern Division agreed to clarify its interest in, and rights to, the property in and on the Restaurants.  (*Id*., ¶ 22).  JITB Eastern Division, FFCC, and J&D executed two Landlord's Waiver and Amendment to Loan Documents for this purpose on or about November 26, 2013 and May 30, 2014, respectively, under which JITB Eastern Division disclaimed any interest in the Collateral (Landlord's Waiver 1 and Landlord's Waiver 2).[3]  (*Id*., ¶¶ 23, 24).  JITB Eastern Division recognized under ¶ 4 that the Collateral was personal property and would remain such even if it were affixed or installed upon any of its real property.  (*Id*., ¶ 25).  Under ¶ 5, FFCC had the right to enter upon the property leased to J&D by JITB Eastern Division in order to take possession of the Collateral and dispose of it as necessary, including by removing the Collateral.  (*Id*., ¶ 26).

---

[2] The Consent Agreements are attached to the Verified Complaint as Exhibits K and L.

[3] The Landlord's Waivers are attached to the Verified Complaint as Exhibits M and N.

On April 25, 2016, JITB gave J&D a notice of default indicating that its franchise locations did not comply with JITB's standards set forth in the parties' franchise agreements. (*Id*., ¶ 27). On information and belief, JITB Eastern Division gave J&D notice of default at about the same time. (*Id*). J&D responded that it intended to cure the purported deficiencies and then sell the Restaurants. (*Id*., ¶ 28). To address "structural and operational concerns at the Restaurants," J&D spent "significant resources" to paint and repair the Restaurants and their equipment, improve the landscaping, raise some starting wages, and conduct staff retraining and recertification. (*Id*., ¶ 29). On information and belief, J&D used FFCC's cash collateral for these purposes with defendants' knowledge. (*Id*., ¶ 30). Defendants monitored J&D's progress and commented in a June 2016 update that the Restaurants looked "terrific." (*Id*., ¶ 31).

After addressing defendants' concerns about purported structural and operational deficiencies at the Restaurants, J&D attempted to find a buyer for the Restaurants with the assistance of a financial advisory and investment banking firm it retained. (*Id*., ¶¶ 32, 33). Defendants retained the right to approve any sale of the Restaurants and to purchase the Restaurants themselves. (*Id*., ¶ 35). Defendants did not select any of the "satisfactory" offers to purchase the Restaurants that were made to J&D and presented to them and they declined to purchase the Restaurants themselves, thereby preventing J&D from collecting the funds it needed to repay FFCC and J&D's other creditors. (*Id*., ¶¶ 35, 36).

On or about September 11, 2016, defendants sent J&D a modified notice of default. (*Id*., ¶ 37). On or about January 31, 2017, defendants sent J&D a notice terminating the franchise and lease agreements pertaining to the Restaurants, which damaged FFCC's interest in the goodwill and going-concern value of the Restaurants. (*Id*., ¶ 38).

On or about April 3, 2017, defendants filed suit against J&D in the District Court of Tarrant County, Texas (Case No. 048-291340-17, the "Franchise Litigation") but did not include FFCC as a party or notify FFCC of the suit. (*Id*., ¶ 40). Defendants initially included claims to foreclose upon the Collateral. (*Id*., ¶ 41). FFCC contacted defendants to assert its interest in the Collateral. (*Id*., ¶ 42). FFCC expressed its opposition to defendants' plan to use and control FFCC's Collateral while continuing operations at the Restaurants and demanded that defendants compensate FFCC for such use or control of the Collateral. (*Id*., ¶¶ 43, 44). Defendants acknowledged the legitimacy of FFCC's claims to the Collateral and agreed that if defendants took over the Restaurants, defendants would not use or control the Collateral but would assess and value the Restaurants while keeping the Collateral "[s]afe and insured." (*Id*., ¶ 45). On May 1, 2017, J&D surrendered possession and control of the Restaurants and the personal property located at each site, including the Collateral, to defendants and the Restaurants were closed within a few days (the Go Dark Period). (*Id*., ¶ 46). In the following weeks, defendants paid those creditors of J&D with security interests in its food inventory but did not respond to FFCC's demands that they compensate FFCC for the Collateral. (*Id*., ¶ 47). During the Go Dark Period, defendants apparently removed some of the Collateral from the Restaurants despite assertions to the contrary and were preparing to reopen the Restaurants, which would necessarily involve defendants' use of the Collateral. (*Id*., ¶ 48). Defendants did not attempt to compensate FFCC "during this time" and "only recently contacted FFCC" with what FFCC considered to be a "completely unreasonable" offer to purchase the Collateral. (*Id*., ¶ 49).

On May 19, 2017, J&D filed for bankruptcy under Chapter 7 in the Northern District of Texas (Case No. 17-42099-mxm7, the "J&D Bankruptcy"). (*Id*., ¶ 50). On June 5, 2017, defendants filed a motion in the J&D Bankruptcy seeking expedited relief from the automatic

bankruptcy stay as it pertained to FFCC's Collateral so they could reopen the Restaurants, some as early as June 12, 2017. (*Id*., ¶ 51, 54). The bankruptcy court granted relief from the stay on June 8, 2017. (*Id*., ¶ 53). On information and belief, defendants intended to open some or all of the Restaurants by that date or very soon thereafter and sell them to a third party. (*Id*., ¶¶ 54, 56). FFCC has informed defendants that absent payment in full under the Secured Notes, they are not permitted to use, possess or dispose of the Collateral. (*Id*., ¶ 57).

FFCC brings two state law claims for breach of contract. (First and Second Claims for Relief). FFCC claims that JITB breached the Consent Agreements, and violated an implied duty of good faith and fair dealing, by attempting to foreclose on the Collateral without notice to FFCC; using or removing the Collateral without compensating FFCC and without obtaining its permission; seeking relief from the stay in the J&D Bankruptcy in order to use, dispose of, or foreclose upon the Collateral; and otherwise depriving FFCC of its superior rights in and to the Collateral (First Claim for Relief). (*Id*., ¶¶ 58-65). FFCC claims that JITB Eastern Division breached the Landlord's Waivers in the same manner and also violated an implied duty of good faith and fair dealing. (*Id*., ¶¶ 66-73). FFCC brings a claim for unjust enrichment against both defendants alleging they have converted and retained FFCC's Collateral without fairly compensating FFCC and unjustly and inequitably enriched themselves at FFCC's expense by refusing to fairly compensate FFCC for the Collateral, retaining the improvements to the Restaurants that FFCC funded for J&D, preventing J&D from repaying FFCC by rejecting the purchase offers they received, refusing to exercise their right of first refusal, and assuming control of the materially improved Restaurants (Third Claim for Relief). (*Id*., ¶¶ 74-81). FFCC also brings a claim for conversion against defendants alleging defendants have wrongfully converted the Collateral, on which FFCC has a superior lien, by removing and exercising control

over use of the Collateral during the Go Dark Period while refusing to compensate FFCC for the Collateral (Fourth Claim for Relief). (*Id.*, ¶¶ 82-88). FFCC brings a claim for tortious interference with contract, alleging the promissory notes and Security Agreements between FFCC and J&D were enforceable agreements, defendants were aware of the agreements, and defendants intentionally and without reasonable justification procured J&D's breach of the agreements by preventing J&D from selling the Restaurants to obtain the funds it needed to repay the FFCC loans and by convincing J&D to surrender the Collateral to defendants, which eliminated FFCC's interest in the goodwill and going-concern value of the Restaurants (Fifth Claim for Relief). (*Id.*, ¶¶ 89-95). Finally, FFCC brings a claim for civil conspiracy alleging that defendants intentionally and with malice agreed to and did combine their efforts to injure FFCC by allegedly committing the unlawful acts of conversion and tortious interference (Sixth Claim for Relief). (*Id.*, ¶¶ 96-100). FFCC claims it has suffered damages as a result of defendants' actions; that it will also suffer irreparable harm from defendants' breaches of contract and conversion for which it has no adequate remedy at law if JITB is not enjoined and restrained from reopening the stores and using the Collateral; and that it is entitled to an award of punitive damages for defendants' tortious interference with contract and civil conspiracy. (*Id.*, ¶¶ 55, 64, 65, 72, 73, 80, 81, 87, 88, 94, 95, 99).

## III. Personal jurisdiction

### A. Procedural history

Defendants removed this case from state court on June 12, 2017. (Docs. 1, 3). Defendants' counsel entered her appearance that same day. (Doc. 2). Defendants filed their motion to change venue (Doc. 6) and response in opposition to the TRO motion (Doc. 7) four days later. In their response to the TRO motion, defendants stated that they "expressly do not

consent to this Court's exercise of personal jurisdiction over them." (Doc. 7 at 2). Defendants went on to address the substance of the motion in case the Court decided to address the merits of the TRO. (*Id.*).

In their motion to transfer venue, defendants moved the Court to transfer this case to the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and independent witnesses and in the interest of justice.[4] (Doc. 6). In asserting that the Western District of Texas is a transferee court where the case "might have been brought" for purposes of § 1404(a), defendants allege that 28 U.S.C. § 1391 is the applicable venue statute and that venue is not proper in Ohio because "personal jurisdiction" over them is lacking under § 1391(c) and *Daimler AG v. Bauman*, -- U.S.--, 134 S.Ct. 746 (2014).[5] (Doc. 6 at 7-8). However, defendants' argument is premised on the incorrect venue statute. Because this case was brought in state court and removed to the District Court, 28 U.S.C. § 1441 is the governing venue statute and § 1391 does not apply. *Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531, 534 (6th Cir. 2002) ("Venue in removed cases is governed solely by § 1441(a)) (citing *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666 (1953); *Lee v. Chesapeake & O. Ry. Co.*, 260 U.S. 653, 657 (1923)). *See also Nationwide Mut. Ins. Co. v. Tamariz-Wallace*, No. C2-08-1148, 2009 WL 1850612, at *2 (S.D. Ohio June 19, 2009) (Sargus, J.). Under 28 U.S.C. § 1441(a), "the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is

---

[4] That section provides, in pertinent part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

[5] Section 1391(c)(2) defines an entity's residence in terms of personal jurisdiction and states that "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question. . . ." 28 U.S.C. § 1391(c)(2).

pending.'" *Nationwide Mut. Ins. Co.*, 2009 WL 1850612, at *2 (quoting *Polizzi*, 345 U.S. at 666). This case was originally brought in state court in Hamilton County, Ohio, which is within the Western Division of the Southern District of Ohio; the action is therefore properly venued here. *Id.* (citing *Langley v. Prudential Mortg. Capital Co.*, 546 F.3d 365, 371 (6th Cir. 2008)).

Plaintiff did not address personal jurisdiction in its response to the motion to change venue. (Doc. 8). In their reply brief, defendants first raised the issue of whether personal jurisdiction exists over either defendant in Ohio under the Fourteenth Amendment. (Doc. 11 at 2-7). Because FFCC did not have an opportunity to address this issue before filing its response and prior to the hearing on defendants' motion, the Court gave plaintiff an opportunity to brief the issue of whether this Court has personal jurisdiction over defendants.

### B. Waiver

Plaintiff FFCC argues that defendants waived any personal jurisdiction defense when counsel filed her general notice of appearance in this action on June 12, 2017 (Doc. 2), without indicating that her appearance was solely for the purpose of contesting personal jurisdiction. (Doc. 13 at 3-4). Plaintiff contends that "binding Sixth Circuit precedent requires this Court 'to exercise personal jurisdiction whenever a defendant's attorney enters a general appearance.'" (*Id.* at 3, citing *M&C Corp. v. Erwin Behr GmbH & Co., KG*, 508 F. App'x 498 (6th Cir. 2012); *Gerber v. Riordan*, 649 F.3d 514 (6th Cir. 2011); *Kenyon v. Clare*, No. 3:16-CV-00191, 2016 WL 6995661 (M.D. Tenn. Nov. 29, 2016)).

Plaintiff also argues that defendants waived any personal jurisdiction arguments by filing a motion to transfer venue under 28 U.S.C. § 1404(a). (Doc. 13 at 4-5) (collecting cases from other circuits). Plaintiff relies on the reasoning of courts that have found a motion to dismiss for lack of personal jurisdiction that is not joined with an earlier filed motion to transfer under §

1404(a) is barred under Fed. R. Civ. P. 12(g).[6] *See Elderberry of Weber City, LLC v. Living Centers-S.E., Inc.*, No. 6:12-CV-00052, 2013 WL 1164835, at *3 (W.D. Va. Mar. 20, 2013). Plaintiff alleges a personal jurisdiction defense is barred under this scenario because a § 1404(a) motion presupposes that the transferor court has jurisdiction over a defendant, which is a prerequisite to effecting a change of venue. (Doc. 13 at 5, citing *Berol Corp. v. BIC Corp.*, No. 02 C 0559, 2002 WL 1466829, at *1 (N.D. Ill. July 8, 2002) (holding that § 1404(a) motion is analogous to a Rule 12(b)(3) motion to change venue and is therefore properly viewed as a Rule 12 motion for waiver purposes under Rule 12(g)); *Martin v. Stokes*, 623 F.2d 469, 471 (6th Cir. 1980) (§ 1404(a) generally applies to actions brought "in a permissible but inconvenient forum")).

_____

[6] Fed. R. Civ. P. 12(g) states:

> (1) *Right to Join.* A motion under this rule may be joined with any other motion allowed by this rule.
>
> (2) *Limitation on Further Motions.* Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Fed. R. Civ. P. 12(h) provides:

> (h) Waiving and Preserving Certain Defenses.
>
> (1) *When Some Are Waived.* A party waives any defense listed in Rule 12(b)(2)-(5) by:
>   (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or
>   (B) failing to either:
>     (i) make it by motion under this rule; or
>     (ii) include it in a responsive pleading or in an amendment allowed by
>        Rule 15(a)(1) as a matter of course.
>
> (2) *When to Raise Others.* Failure to state a claim upon which relief can be granted,
>   to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:
>   (A) in any pleading allowed or ordered under Rule 7(a);
>   (B) by a motion under Rule 12(c); or
>   (C) at trial
>
> (3) *Lack of Subject-Matter Jurisdiction.* If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

Defendants contend that plaintiff's argument ignores two pertinent matters: (1) the plain language of Rule 12(h), which does not indicate that filing a general appearance could waive a personal jurisdiction defense, and (2) the elimination of technical distinctions between general and special appearances under the Rule. (Doc. 14 at 2-3, citing 5B Wright & Miller, Fed. Prac. & Proc. VI, § 1344 (3d ed. 2013); *accord*, *County Sec. Agency v. Ohio DOC*, 296 F.3d 477, 483 (6th Cir. 2002)). Defendants contend that in arguing to the contrary, FFCC has misconstrued *Gerber*'s holding that the defendants there had "waived their personal jurisdiction defense only because the defendants waited nearly three years before filing a motion challenging personal jurisdiction." (Doc. 14 at 3-4, citing *Gerber*, 649 F.3d at 518-19). Defendants allege that the Sixth Circuit has confirmed after *Gerber* that "the test for finding forfeiture of a personal-jurisdiction defense through conduct [is] whether a defendant's conduct prior to raising the defense has given the plaintiff 'a reasonable expectation' that the defendant will defend the suit on the merits or whether the defendant has caused the court to 'go to some effort that would be wasted if personal jurisdiction is later found lacking.'" (*Id*., quoting *King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012) (quoting *Gerber,* 649 F.3d at 519)). Defendants allege that they gave plaintiff notice here by stating in their response to the TRO motion that they "expressly do not consent to this Court's exercise of jurisdiction over them" (Doc. 4 at 2) and arguing in their motion to transfer that this Court lacks personal jurisdiction over them under the *Daimler AG* decision (Doc. 6 at 8-9).

Defendants further argue that the filing of their motion to transfer does not constitute a waiver of the defense of lack of personal jurisdiction. (Doc. 14 at 6). Defendants contend that a motion to transfer under the statutory provision of Section 1404 is distinct from a motion to dismiss under Rule 12(b) and therefore the waiver provision of Rule 12(h) does not apply. (*Id.*,

citing *Convergence Techs. (USA), LLC v. Microloops Corp.*, 711 F. Supp.2d 626, 632-33 (E.D. Va. 2010) (the filing of a motion to transfer does not operate as a waiver of a personal jurisdiction objection)).

Defendants did not waive their personal jurisdiction argument as a result of their counsel's failure to enter a "special appearance" for the sole purpose of raising the jurisdiction issue. Courts interpreting *Gerber* have declined to narrowly construe its holding and look to "all the relevant circumstances" when determining waiver. *See King*, 694 F.3d at 659; *Best v. AT&T Inc.*, No. 1:12-cv-564, 2014 WL 12571407, at *6 (S.D. Ohio Sept. 16, 2014) (Report and Recommendation), *adopted sub nom. Best v. Mobile Streams, Inc.*, 2014 WL 4988220 (S.D. Ohio Oct. 7, 2014) (and cases cited therein). Here, defendants raised the personal jurisdiction issue in their opposition to plaintiff's motion for TRO and motion for change of venue, both of which were filed four days after this action was removed from state court.[7] In addition, the Sixth Circuit made clear prior to *Gerber* in *County Sec. Agency* that counsel need not enter a "special appearance" for this purpose by stating: "In order to object to a court's exercise of personal jurisdiction, it is no longer necessary to enter a 'special appearance.'" *County Sec. Agency*, 296 F.3d at 483. The decision is consistent with changes ushered in by Fed. R. Civ. P. 12, which makes no reference to a general or special appearance and provides that every defense may be made either in the responsive pleading or by motion. 5B, Fed. Prac. & Proc. VI, § 1344.

Nor did defendants waive the personal jurisdiction issue by failing to raise it in their motion to transfer. This district court has held that a motion to transfer venue under 28 U.S.C. § 1404(a) is not made under Fed. R. Civ. P. 12(b) and that the waiver provision of Rule 12(h) is

---

[7] In contrast, the defendants in *Gerber* filed motions to stay litigation pending arbitration, to vacate the default judgment, and to enforce a settlement agreement; made Rule 26 discovery responses; participated in a pretrial conference; and waited two and one-half years after filing their appearance to contest personal jurisdiction. 649 F.3d at 518-19.

inapplicable to such a motion. *James v. Norfolk & W. Ry. Co.*, 430 F. Supp. 1317, 1319 n. 1 (S.D. Ohio 1976) (§ 1404(a) motion is not a motion under Rule 12(b)(3)) (distinguished by *Elderberry*, 2013 WL 1164835, at *3); *see also Smith v. Kyphon, Inc.*, 578 F. Supp.2d 954, 957 (M.D. Tenn. 2008) (citing 5A Wright & Miller, Federal Practice and Procedure § 1352, at 272) (motions to transfer venue under § 1404(a) are not made pursuant to Rule 12(b)).

Finally, the cases plaintiff cities do not support its position that a motion to transfer venue under § 1404(a) presupposes the existence of personal jurisdiction in this Court. The cases plaintiff relies on are distinguishable from this case, which was removed from state court pursuant to 28 U.S.C. § 1441(a). A case removed to federal court under § 1441 is always properly venued. *See Nationwide Mut. Ins. Co.*, 2009 WL 1850612, at *2. The defendant therefore cannot move to transfer venue under § 1406(a), which applies when venue is improperly laid; however, the defendant can request that the case be transferred to a more convenient forum pursuant to 28 U.S.C. § 1404(a). *Id.*, at *2-3; *Hite v. Norwegian Caribbean Lines*, 551 F. Supp. 390, 393 (E.D. Mich. 1982) (citing 1A J. Moore & J. Wicker, Moore's Federal Practice ¶ 0.157[8], at 123 and n. 15 (2d ed. 1982)). Plaintiff has not cited any authority to show that a defendant waives a personal jurisdiction defense when it exercises the only option it has for requesting a transfer of venue after a case has been removed, which is a motion under § 1404(a).

Thus, plaintiff has not shown that defendants waived any personal jurisdiction defense by filing their motion for transfer of venue under § 1404(a).

## C. Personal jurisdiction analysis

A transfer of venue under 28 U.S.C. § 1404(a) is not possible where the transferor court lacks personal jurisdiction over the defendant. *Jackson v. L & F Martin Landscape*, 421 F.

14

App'x 482, 483 (6th Cir. 2009) (citing *Pittock v. Otis Elevator Co.,* 8 F.3d 325, 329 (6th Cir. 1993)); *see also Dolce & Gabbana Trademarks S.R.L. v. TXT Enterprises, Inc.*, No. 1:14-CV-00855, 2016 WL 8202008, at *6 (S.D. Ohio Mar. 9, 2016) (Dlott, J.); *Nationwide Mut. Ins. Co.,* 2009 WL 1850612, at *3. Thus, for purposes of deciding the motion to transfer and before ruling on the motion for TRO, the Court must determine whether it has personal jurisdiction over defendants.

Plaintiff FFCC argues that the facts set forth in the Verified Complaint support the Court's exercise of specific jurisdiction under three provisions of the Ohio long-arm statute: "Transacting any business in this state" (A)(1); (2) "Causing tortious injury in this state by an act or omission outside this state if [the defendant] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state" (A)(4); and (3) "Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when [the defendant] might reasonably have expected that some person would be injured thereby in this state" (A)(6). (Doc. 13 at 6, citing Ohio Rev. Code § 2307.382(A)). FFCC argues that the Court's exercise of personal jurisdiction also comports with the Due Process Clause of the Fourteenth Amendment. (*Id*. at 12-15). FFCC has added supporting factual allegations in its response to the motion to transfer (Doc. 8) and the Declaration of Alan C. Paterson, Senior Vice President and Chief Credit Officer of FFCC, filed with its supplemental brief (Doc. 13-1, Exh. A).

To support its personal jurisdiction claim, FFCC relies on Paterson's declaration statements that the FFCC franchise group's "de facto principal place of business" since 2011 has been Cincinnati, Ohio (Paterson Decl., ¶ 3); the individuals responsible for FFCC's loans to non-

party J&D and the related Consent Agreements and Landlord's Waivers between plaintiff and defendants are either physically based in Ohio or report to plaintiff's Ohio's operations (*Id.*, ¶¶ 4-6, 9); and the documents relating to plaintiff's loans to non-party J&D are stored in Cincinnati, the loans originated from plaintiff's operations in Ohio, and the loans were paid back with funds directed to plaintiff's accounts in Ohio. (*Id.*, ¶ 7-8, 13). Plaintiff further relies on Paterson's assertions that "FFCC's communications with JITB and [JITB] Eastern Division have been based in Cincinnati, Ohio." (*Id.*, ¶ 10). Paterson asserts that he and other FFCC employees have exchanged telephone calls with defendants, which FFCC's employees have placed from telephone numbers "with Cincinnati area codes (513)" and which defendants in turn have placed to FFCC employees at its Cincinnati offices. (*Id.*, ¶¶ 11, 12). He further states that plaintiff's employees have sent defendants' employees emails with signature blocks showing a Cincinnati address for plaintiff's offices, and defendants have sent plaintiff's employees emails that defendants knew would be received and read in plaintiff's Cincinnati offices. (*Id.*). Paterson asserts that plaintiff's loan to non-party J&D is managed entirely from plaintiff's office in Cincinnati. (*Id.*, ¶ 13).

In response, defendants contend that the Court cannot exercise jurisdiction over them under Ohio's long-arm statute based on any of the three statutory provisions on which plaintiff relies. (Doc. 14). Defendants also argue that the exercise of personal jurisdiction over them would not comport with due process requirements.

### 1. Standard

The plaintiff has the burden of establishing that a district court can exercise jurisdiction over defendants. *Pittock*, 8 F.3d at 328 (citing *Serras v. First Tennessee Bank National Association,* 875 F.2d 1212, 1214 (6th Cir. 1989)). The plaintiff's burden is "relatively slight"

where, as here, the Court rules without conducting an evidentiary hearing. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (citing *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quotation omitted)); *see also Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006)). Plaintiff need make only a *prima facie* showing that personal jurisdiction exists. *Id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Plaintiff can meet its burden by "establishing with reasonable particularity sufficient contacts between [defendants] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. California Fed. Sav. Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). In determining whether plaintiff has met its burden, the district court considers the pleadings and affidavits "in a light most favorable to the plaintiff[]" and does not weigh "the controverting assertions of the party seeking dismissal." *MAG IAS Holdings, Inc.*, 854 F.3d at 899 (quoting *Theunissen*, 935 F.2d at 1459).

The Court's subject matter jurisdiction in this case is based on diversity of the parties. Therefore, plaintiff must satisfy the requirements of Ohio's long-arm statute and constitutional due process requirements for the Court's exercise of personal jurisdiction over defendants. *MAG IAS Holdings, Inc.*, 854 F.3d at 899; *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) (citing *Kauffman Racing Equip., L.L.C. v. Roberts,* 930 N.E.2d 784, 790 (Ohio 2010); *Goldstein v. Christiansen,* 638 N.E.2d 541, 543 (Ohio 1994)). Ohio's long-arm statute does not extend to the limits of the Due Process Clause, and "the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Conn*, 667 F.3d at 712.

"[U]nder Ohio law, a court may exercise personal jurisdiction over a non-resident

defendant only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute." *Id.* at 718. The statute grants the Court personal jurisdiction over a non-resident if his conduct falls within one of the nine bases for jurisdiction listed under the statute and the cause of action alleged arises from the person's conduct. *See* Ohio Rev. Code § 2307.382(A) ("A court may exercise personal jurisdiction over a person who acts directly or by an agent, *as to a cause of action arising from* the person's" conduct) (emphasis added). FFCC alleges that defendants are subject to personal jurisdiction in the State of Ohio under three of the nine bases:

> (1) Transacting any business in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

Ohio Rev. Code § 2307.382(A)(1), (4), (6). The Court will address each subsection in turn.

**2 The Ohio long-arm statute**

**a. Section 2307.382(A)(1)**

Under § 2307.382(A)(1), the Court may "exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in [Ohio]." To satisfy the "transacting any business" prong, the defendant must "do some act or consummate some transaction within the forum." *Imwalle v. Reliance Med. Products, Inc.*, No. 1-04-275, 2005 WL 2277426, at *3 (S.D. Ohio Sept. 19, 2005) (citing *Hoover Co. v. Robeson Industries Corp.,* 904 F. Supp. 671, 674 (N.D. Ohio 1995) (citing *Mellott v. Dico Co., Inc.,* 454 N.E.2d 146, 148-149 (Ohio App. 9th Dist. 1982)).

"Transacting any business" under the long-arm statute means "to carry on business" or "to have dealings." *Id.* (quoting *Douglas v. Modern Aero, Inc.,* 954 F. Supp. 1206, 1210 (N.D. Ohio 1997) (citing *Goldstein,* 638 N.E.2d 541); *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.,* 559 N.E.2d 477, 480 (Ohio 1990). The Ohio Supreme Court has further elaborated on its meaning as used in the statute:

> The word embraces in *its meaning the carrying on or prosecution of business negotiations* but it is a *broader term than the word 'contract' and may involve business negotiations* which have been either wholly or partly brought to a conclusion. . . .

*Kentucky Oaks Mall*, 559 N.E.2d at 479 (emphasis in original) (citation omitted). Ohio courts interpret the "transacting any business" prong of § 2307.382(A) broadly. *Lexon Ins. Co. v. Devinshire Land Dev., LLC*, 573 F. App'x 427, 429 (6th Cir. 2014) (citing *Kentucky Oaks Mall*, 559 N.E.2d at 480).

This District Court has considered two factors in the context of a contract dispute to determine whether an out-of-state defendant "transacted any business" within the meaning of the Ohio long-arm statute. *Research Inst. At Nationwide Children's Hosp. v. Trellis Bioscience, LLC*, No. 2:15-CV-3032, 2016 WL 5791194, at *5 (S.D. Ohio Sept. 30, 2016) (citing *Paglioni & Assocs. v. Winnercomm, Inc.,* No. 2:06-CV-276, 2007 WL 852055, at *9 (S.D. Ohio Mar. 16, 2007)). The first factor is whether the out-of-state defendant "initiated the business dealing. If the defendant reached out to the plaintiff in the forum state to create a business relationship, the defendant transacted business in the forum state." *Id.* (citing *Paglioni*, 2007 WL 852055, at *9) (internal citations omitted). The second factor is "whether the parties conducted their negotiations or discussions in the forum state" and on what terms. *Id.* (citing *Paglioni*, 2007 WL 852055, at *9) (internal citations omitted). "If the parties negotiated in the forum state with

provisions affecting the forum state, the defendant transacted business in the forum state." *Id.* (citing *Paglioni*, 2007 WL 852055, at *9) (internal citations omitted).

Plaintiff argues there are sufficient contacts here to establish personal jurisdiction under the "transacting any business" clause because defendants negotiated and entered into a contract with plaintiff FFCC, a company that operated in Cincinnati, Ohio. (Doc. 13 at 8, citing Doc. 13-1, Exh. A, Paterson Decl., ¶¶ 3, 13). Plaintiff asserts that it managed the loans with non-party J&D that were the subject of plaintiff and defendants' agreements from Cincinnati, and "all relevant documents – including the [J&D] loan documents and all supporting paperwork - are maintained in Ohio." (*Id.*, citing Paterson Decl., ¶¶ 3, 7, 13). Plaintiff also contends that defendants' communications with it included emails sent to Ohio recipients and phone calls made to Ohio numbers, and that notices defendants are required to send under the Consent Agreements and Landlord's Waivers must be sent to FFCC in Ohio. (*Id.*, citing Paterson Decl., ¶¶ 3-6, 10, 12-13; Doc. 3-1, Exh. K, Consent Agreement 1, ¶ 4). Plaintiff relies on three cases to argue the Court has personal jurisdiction over defendants: *Cole v. Mileti,* 133 F.3d 433, 436 (6th Cir. 1998); *Trellis Bioscience, LLC*, 2016 WL 5791194, at *3; and *Russian Collections, Ltd. v. Melamid*, No. 2:09-CV-300, 2009 WL 4016493, at *3-6 (S.D. Ohio Nov. 18, 2009). (Doc. 13 at 7-8).

There is no question that plaintiff and defendants entered into several contractual agreements. For jurisdictional purposes, the question is whether defendants did "some act or consummate[d] some transaction within" Ohio in connection with the contracts. *See Imwalle*, 2005 WL 2277426, at *3. Plaintiff has not introduced evidence that shows this requirement of § 2307.382(A)(1) is met.

First, plaintiff has made no allegations and has introduced no evidence to show that defendants "initiated the business dealing" by "reach[ing] out to [FFCC] in [Ohio] to create a business relationship." *Trellis Bioscience, LLC,* 2016 WL 5791194, at *5. Plaintiff alleges in the Verified Complaint that after it began lending to J&D, it entered into the Consent Agreements with JITB by which JITB agreed to subordinate the security interest it had allegedly been granted in the Collateral under its franchise agreements with non-party J&D. (Doc. 3, ¶¶ 10-18). FFCC further alleges in the Verified Complaint that after it began lending to non-party J&D, defendant JITB Eastern Division disclaimed any interest in the Collateral, to induce plaintiff to lend to J&D and as consideration for the J&D loans, by executing Landlord's Waivers 1 and 2. (*Id.*, ¶¶ 22- 24). However, plaintiff makes no allegations that indicate either defendant approached plaintiff in Ohio about subordinating and disclaiming defendant's interest in the Collateral. Nor has plaintiff submitted any evidence that shows either defendant initiated business dealings with plaintiff in Ohio. Paterson states in his declaration that the parties have communicated via telephone using plaintiff's employees' Ohio telephone numbers and via emails that were sent from and received in FFCC's Ohio office, but he provides no details as to the substance and time frame of the communications. (Doc. 13-1, Exh. A, Paterson Decl., ¶¶ 11, 12). Thus, while the Court accepts these statements as true for purposes of determining whether there is personal jurisdiction over defendants, Paterson's declaration statements shed no light on whether defendants reached out to plaintiff in Ohio to initiate any of the agreements between plaintiff and defendants. Thus, plaintiff has not made a prima facie showing that defendants "transacted any business" within the meaning of the Ohio long-arm statute by initiating business dealings with plaintiff in Ohio.

Nor has FFCC come forward with evidence that shows the parties conducted negotiations or discussions in the forum state with provisions affecting the forum state. *Trellis Bioscience, LLC*, 2016 WL 5791194, at *5 (citing *Paglioni*, 2007 WL 852055, at *9). Plaintiff has provided evidence that its franchise group is based in Ohio; the individuals responsible for approving and signing off on plaintiff's loan with non-party J&D are based in Ohio; plaintiff's employee who signed the loan paperwork (Andrea Miranda) reported to plaintiff's Loan Operations Group based in Ohio; payments are made and funds are drawn and repaid for all of plaintiff's loans at its operations center and bank in Ohio by employees in Ohio; and the J&D loan documents are housed here in Ohio. (Doc. 13-1, Exh. A, Paterson Decl., ¶¶ 2-9). Plaintiff also asserts that all notices defendants must send plaintiff under the Consent Agreements and Landlord's Waivers "will necessarily be sent to FFCC in Ohio." (Doc. 13 at 8, citing Paterson Decl., ¶¶ 3-6, 13; Doc. 3-1, Exh. K, Consent Agreement, ¶ 4 - requiring defendant JITB to provide plaintiff with written notice of certain developments). This evidence demonstrates plaintiff has a presence in Ohio, but it does not show that defendants negotiated or discussed contract terms with plaintiff in Ohio that had an impact on Ohio. In fact, it cannot be gleaned from the evidence that defendants even knew that plaintiff had a connection with Ohio at the time they entered into the Consent Agreements and Landlord's Waivers. The contracts themselves do not provide any inkling of a link between the parties' dealings and Ohio. The Landlord's Waivers do not reference FFCC's location (*Id.*, Exhs. M, N), and the Consent Agreements identify FFCC as an Indiana corporation with its principal place of business in New Jersey. (Doc. 3, Exhs. K, L). Andrea Miranda signed each of the contracts on behalf of FFCC in her capacity as Vice President of FFCC. (*Id.*, Exhs. K, L, p. 5; Exhs. M, N, p. 3). Although she did not provide either her address or FFCC's address in these documents, she listed a New Jersey address when she signed Schedule A to the secured

promissory notes as Vice President of FFCC. (*Id*., Exhs. A-E). Miranda's address - "One

Maynard Drive, Suite 2104, Park Ridge New Jersey 07656" - is the same address FFCC

provided for its offices and the location where the installment payments on the secured

promissory notes were to be paid. (*Id*.). Thus, evidence showing that FFCC has an office that

manages loans in Ohio and that it performs loan operations here does not support a finding that

defendants negotiated or discussed their agreements with plaintiff here and that those agreements

had an impact on Ohio.

FFCC also relies on Paterson's declaration to establish there were "communications" via

email and telephone between plaintiff's employees located in Ohio and defendants' employees.

(Doc. 13-1, Exh. A, Paterson Decl., ¶¶ 10-12). However, whether the communications related to

these parties' contract negotiations is unknown because the declaration provides no information

regarding the substance of the communications, who was involved in the communications, and

when the communications occurred. Thus, even though defendants' employees had

communications with plaintiff's employees located in Ohio, the communications are not

evidence that plaintiff and defendants negotiated or entered into the contracts in Ohio.

Assuming defendants had communications via telephone and email with plaintiff's

employees in Ohio regarding the terms of the contracts between plaintiff and defendants, the

evidence nonetheless does not show how those discussions impacted Ohio. It is undisputed that

FFCC is an Indiana corporation with its principal place of business in New Jersey. FFCC Vice-

President Miranda signed the parties' agreements on behalf of plaintiff at a New Jersey address

of One Maynard Drive, Park Ridge, NJ 07656. Consistent with the other documentation in the

record, plaintiff's filings with the Ohio Secretary of State list FFCC as an Indiana corporation

with its principal place of business located at this same New Jersey address. (Doc. 14, Exh. A,

Affidavit of Manju Gupta, ¶ 3, Exh. 1 - State of Ohio Certificate of Amendment to Foreign

Corporation Application for License). It is not clear why the parties' contract terms would have

impacted Ohio when FFCC is neither incorporated nor has its principal place of business in

Ohio. *See infra*, pp. 28-29.

The three cases FFCC cites to support a finding of personal jurisdiction are

distinguishable from this case. FFCC cites *Cole,* 133 F.3d at 436, for the proposition that "[i]f . .

. a nonresident defendant transacts business by negotiating and executing a contract via

telephone calls and letters to an Ohio resident, then the defendant has purposefully availed

himself of the forum by creating a continuing obligation in Ohio." (Doc. 13 at 7-8, citing *Cole*,

133 F.3d at 436). Here, there is no evidence that defendants and FFCC negotiated and executed

their contracts via communications to FFCC in Ohio.

Second, FFCC analogizes this case to *Russian Collections, Ltd.*, 2009 WL 4016493, at

*3-6. (Doc. 13 at 8). The Court in *Russian Collections* found that personal jurisdiction over the

defendant was authorized under Ohio's long-arm statute based on facts showing:

> (1) negotiations were conducted between an Ohio company from within Ohio,
> during which documents and emails were sent to Ohio and phone calls were made
> into Ohio; (2) the Letter of Intent and the Agreement were drafted in Ohio, and
> while they were being drafted, the master documents were kept in Ohio and all
> changes to the documents were made in Ohio; (3) the Agreement was signed by
> [the plaintiff] RC in Ohio and returned to RC in Ohio by [the defendant] Melamid
> after he signed it; (4) all notices, statements, and communications required under
> the Agreement are to be sent to RC in Ohio; and (5) Melamid owes the following
> continuing obligations to RC in Ohio - he must offer Additional Paintings, he
> must pass title to the RC Paintings, he must provide consent letters, and he must
> deliver the RC Paintings.

*Russian Collections*, 2009 WL 4016493, at *4. Plaintiff alleges that like the defendant in Russia

Collections, defendants JITB and JITB Eastern Division "negotiated with and entered into a

contract with FFCC, a company that operated in - and managed the [J&D] loans that were the

subject of the parties' agreement from - Cincinnati, Ohio"; "all relevant documents - including the [J&D] loan documents and all supporting paperwork - are maintained in Ohio"; defendants' communications with plaintiff "included emails sent by Defendants to Ohio recipients, and phone calls made by Defendants to Ohio numbers"; and all notices that defendants must send to plaintiff pursuant to the Consent Agreements and Landlord's Waivers "will necessarily be sent to FFCC in Ohio." (Doc. 13 at 8, citing Doc. 13-1, Exh. A, Paterson Decl., ¶¶ 3-7, 10, 12-13, Doc. 3-1, Exh. K, ¶ 4). This case is distinguishable from *Russian Collections* because the evidence shows plaintiff FFCC is not an Ohio company, only that it maintains an office and manages some of its operations in Ohio; there is no evidence that negotiations with defendants were conducted from within Ohio or that communications related to plaintiff and defendants' contracts were exchanged with plaintiff's employees in Ohio during contract negotiations; there is no evidence the contracts were drafted in Ohio, signed in Ohio, or returned to Ohio by defendants after they signed them; although the Consent Agreements state that defendants are to provide a copy of each written notice of default served on non-party J&D related to the operations of the Restaurants, the Consent Agreements do not specify that the notice is to be given to FFCC in Ohio; and there is no evidence that defendants owe other continuing obligations to plaintiff in Ohio.

Finally, FFCC urges the Court to apply the holding of *Trellis Bioscience*, 2016 WL 5791194, alleging the Court found jurisdiction there because the defendant had directed electronic communications to Ohio by negotiating and executing a nondisclosure agreement electronically with a company operating in Ohio. (Doc. 13 at 8). In *Trellis Bioscience*, the defendant initiated the business relationship and informed the plaintiff during negotiations that "Ohio jurisdiction is fine"; the defendant directed communications related to the parties'

"business negotiations" in Ohio and the plaintiff received these communications in Ohio; the agreement's terms affected Ohio because the agreement protected confidential information owned by the plaintiff, an Ohio non-profit, and breach of the agreement would impair the plaintiff's confidential information; and the defendant had established a substantial connection to Ohio through acts which included an in-person meeting at the plaintiff's laboratories in Ohio at which the defendant obtained confidential information from the plaintiff. *Trellis Bioscience*, 2016 WL 5791194, at *5-6. In contrast, there is no evidence in the record here to show defendants initiated the parties' business relationship, that defendants directed communications related to the contract negotiations to Ohio, and that plaintiff received these communications in Ohio. Nor is there any evidence that the agreements' terms affected Ohio because while plaintiff performs some operations in Ohio, it is an Indiana corporation with its principal place of business in New Jersey.

The types of contacts found to be sufficient in the cases cited by plaintiff are lacking here. Paterson's affidavit, the contracts between plaintiff and defendants, and the Verified Complaint, considered together, do not show that plaintiff and defendants negotiated or even discussed their contracts in communications directed to and received in Ohio or that the parties' contract terms impacted Ohio. Section 2307.382(A)(1) is not satisfied and the Court cannot exercise personal jurisdiction over defendants based on that provision.

### b. Section 2307.382(A)(4) and (A)(6)

FFCC alleges that the Court has personal jurisdiction over defendants under Ohio Rev. Code § 2307.382(A)(4) and (A)(6). Section (A)(4) confers personal jurisdiction under the long-arm statute over a person "as to a cause of action arising from the person's . . . [c]ausing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business,

or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." Section (A)(6) confers personal jurisdiction under the long-arm statute over a person "as to a cause of action arising from the person's . . . [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." Ohio Rev. Code § 2307.382(A)(6)

Plaintiff contends that defendants regularly perform business in Ohio so as to satisfy the second prong of (A)(4) because JITB Eastern Division is licensed to do business in Ohio and JITB has franchised at least two stores in Ohio. (Doc. 13 at 11, citing Doc. 3, ¶¶ 3-4). Defendants acknowledge that JITB operates and franchises two restaurant locations in Ohio (Doc. 14 at 11-12). Assuming this is sufficient to support a finding that JITB regularly does business in Ohio, FFCC has not cited any authority that equates simply being licensed to do business in Ohio with regularly performing business in the State. Thus, there is no basis for finding JITB Eastern Division regularly performs business in Ohio.

Addressing the first prong of (A)(4) and (A)(6), plaintiff contends "there is no question that the loss FFCC suffered as a result of Defendants' tortious interference with FFCC's lending relationship with J&D was incurred in Ohio." (Doc. 13 at 9). Plaintiff further contends that the Collateral defendants allegedly converted, while located in Texas, constitutes assets of FFCC, which plaintiff claims is operating out of and based in Ohio for all purposes relevant to this action; therefore, any resulting tortious injury will occur in Ohio. (*Id*. at 10). In actuality, though, plaintiff has not produced evidence that shows it incurred losses in Ohio as a result of defendants' alleged tortious conduct so as to satisfy the tortious injury requirement of either (A)(4) or (A)(6). Plaintiff alleges that it made the decision to extend the loan to non-party J&D

in Ohio; it managed the J&D loan in Ohio; it distributed the loan funds to J&D from accounts in Ohio; and J&D did not repay those funds to plaintiff in Ohio because of defendants' tortious conduct.  (*Id*., at 9-10, citing Doc. 13-1, Exh. A, Paterson Decl., ¶¶ 4-5, 8, 13; Doc. 3, ¶¶ 92-94).  The Court accepts as true plaintiff's allegations that the J&D loan decision was made in Ohio and distribution of the J&D loan funds and the loan payments were handled by plaintiff's operations center in Ohio.  It does not follow, though, that plaintiff sustained the loss caused by defendants' alleged tortious interference or conversion of the Collateral in Ohio.

To the contrary, the only address provided for FFCC in the J&D loan documents is the address of plaintiff's principal place of business in New Jersey.  The J&D loan documents were signed by FFCC Vice-President Andrea Miranda, whose only address is listed as plaintiff's New Jersey address.  The documents make no mention of Ohio.  Further, although FFCC has an office in Ohio where it managed the loans to non-party J&D, plaintiff has not alleged facts to show that the loss it incurred as a result of defendants' alleged interference with the J&D loan occurred in Ohio.  Authorities plaintiff has cited to show the tortious injury requirement of (A)(6) is met in this case suggest that the alleged tortious injury did not occur in Ohio because FFCC is neither headquartered, nor has its principal place of business, in Ohio.  (Doc. 13 at 11-12, citing *Fern Exposition Servs., L.L.C. v. Lenhof*, No. C-130791, 2014 WL 3723883 (Ohio App. 1st Dist. July 15, 2014) ("If [defendant] did, in fact, commit the alleged tortious conduct, any injury to [plaintiff] would occur in Ohio, where that company is headquartered."); *Enquip Techs. Group, Inc. v. Tycon Technoglass, S.r.l.*, No. 2010-CA-23, 2010 WL 5123395, at *4 (Ohio App. Dec. 10, 2010) ("any injury [companies] would suffer normally would occur in the state in which the companies were incorporated or in the state in which the companies' principal places of business were located")).  Plaintiff attempts to bring its alleged tortious injury under the purview of (A)(6)

by alleging that its "franchise group's principal place of business is in Ohio." (Doc. 13 at 12). However, FFCC offers no evidentiary support for its allegation and no authority for the proposition that a corporation can have more than one principal place of business. *Cf. Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 96 (2010) (holding for diversity jurisdiction purposes that "principal place of business" typically refers to a single location and "to the place where a corporation's officers direct, control, and coordinate the corporation's activities," and "in practice it should normally be the place where the corporation maintains its headquarters - provided that the headquarters is the actual center of direction, control, and coordination, *i.e.,* the 'nerve center.'"). Applied to the facts of this case, the case law supports a finding that any alleged tortious injury plaintiff suffered occurred either in Indiana, where FFCC is incorporated, or in New Jersey, where FFCC has its principal place of business.

Finally, (A)(6)'s additional requirement that the tortfeasor have a reasonable expectation that the purposefully inflicted injury will occur in the forum state is not met here. Plaintiff alleges that "any out-of-state party committing a tort that has the purpose of causing injury to someone in Ohio has a 'reasonable expectation that the purposefully inflicted injury will occur in Ohio'" so as to satisfy (A)(6). (Doc. 13 at 11, citing *Kauffman Racing Equip., L.L.C.*, 930 N.E.2d at 792; *DDR Corp. v. Control Bldg. Services, Inc.*, No. 1:13-CV-925, 2013 WL 3772478, at *2 (N.D. Ohio July 16, 2013)). The cases FFCC cites do not stand for this sweeping proposition. In *Kauffman*, the Court found it was "clear from the [defamatory] postings that [defendant's] statements were made with the purpose of injuring [plaintiff]." *Kauffman*, 930 N.E.2d at 792. Here, unlike *Kauffman*, it is not clear from the record that defendants' actions were taken with the purpose of injuring FFCC. *In DDR Corp.,* the Court stated that a "nonresident defendant's actions me[et] requirements of [(A)(6)] where he allegedly committed

tortious acts, including conversion, outside Ohio while knowing that [the asset] involved was of an Ohio corporation." *DDR Corp.*, 2013 WL 3772478, at *2. In contrast to *DDR Corp.*, plaintiff has not alleged facts to show the assets involved here are those of an Ohio corporation given that plaintiff is an Indiana corporation with its principal place of business in New Jersey. Thus, plaintiff has not established that all the elements of (A)(4) and (A)(6) are satisfied.

### 3. Conclusion

Plaintiff FFCC has not met its burden of establishing a prima facie case of jurisdiction under any of the three potentially applicable provisions of the Ohio long-arm statute. Plaintiff has introduced evidence to show its loans to non-party J&D were approved in Ohio and were serviced in Ohio, and that defendants had some email and telephone communications with plaintiff's employees in Ohio. However, the nature of the communications is unclear. The communications, considered together with the fact that plaintiff has operations in Ohio that are connected to the underlying loan with non-party J&D, are insufficient to establish a prima facie case of jurisdiction on the basis of transacting business or causing a tortious injury in Ohio. The Court cannot exercise personal jurisdiction over plaintiff FFCC under Ohio's long-arm statute.

### D. The Due Process Clause

Assuming plaintiff's contacts with Ohio were sufficient to satisfy the Ohio long-arm statute, plaintiff would still be required to fulfill constitutional due process requirements for the Court's exercise of personal jurisdiction over defendants. *MAG IAS Holdings, Inc.*, 854 F.3d at 899. There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman,*-- U.S--, 134 S.Ct. 746, 754 (2014); *Gold Medal Products Co. v. Bell Flavors and Fragrances, Inc.*, No. 1:16-CV-00365, 2017 WL 1365798, at *4 (S.D. Ohio Apr. 14, 2017) (Dlott, J.). Plaintiff FFCC claims that the Court has specific jurisdiction

over defendants and does not allege that general jurisdiction exists.  (Doc. 13 at 1, 15).  The Court will therefore limit its due process analysis to specific jurisdiction.

To satisfy the Due Process Clause, a defendant must have had "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation and citation omitted).  Specific jurisdiction exists when a claim arises from or relates to the defendant's contacts with the state.  *Gold Medal Products Co.*, 2017 WL 1365798, at *4 (citing *Int'l Shoe Co.*, 326 U.S. at 316).  Specific jurisdiction must be based on contacts with the forum related to the claim at issue.  *Id*.

The Sixth Circuit applies a three-part test to determine if the exercise of personal jurisdiction over a defendant is consistent with due process: (1) did the defendant purposefully avail itself of the privilege of acting or causing a consequence in the forum state, (2) did the cause of action arise from the defendant's activities in the forum state, and (3) did the defendant's actions, or the consequences the defendant caused, have a sufficiently substantial connection with the forum state so as to make the exercise of jurisdiction reasonable?  *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549-50 (6th Cir. 2016) (citing *Air Prods. and Controls, Inc.*, 503 F.3d at 550) (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

A defendant has availed himself of the privilege of acting or causing a consequence in the forum state where the defendant "'deliberately' has engaged in significant activities within a State or has created 'continuing obligations' between himself and residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-476 (1985) (internal citations omitted). Because the defendant's "activities are shielded by 'the benefits and protections' of the forum's

laws it is presumptively not unreasonable to require [the defendant] to submit to the burdens of litigation in that forum as well." *Id*. at 476. The foreseeability requirement ensures that the defendant "should reasonably anticipate being haled into court [in the forum state]." *Burger King Corp.*, 471 U.S. at 474 (internal citations omitted)). A plaintiff's claims "arise from" the defendant's contacts with the forum state when those contacts are "related to the operative facts of the controversy." *MAG IAS Holdings, Inc.*, 854 F.3d at 903 (citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) (quoting *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996)). The third prong "ensures that the exercise of personal jurisdiction is consistent with notions of 'fair play and substantial justice.'" *Id*. (citing *Burger King*, 471 U.S. at 476-77). When the first two prongs are satisfied, an inference of reasonableness arises and it is only the unusual case that will not satisfy the third criterion. *Id*. at 903-04 (citing *Air Prods. & Controls, Inc.,* 503 F.3d 544 (quoting *Theunissen*, 935 F.2d at 1461).

To support a finding of specific jurisdiction, the plaintiff must prove that the defendant had "sufficient contacts with the forum with respect to the claim at issue." *Dull v. Energizer Personal Care, LLC*, No. 3:14-CV-195, 2015 WL 5308871, at *8 (S.D. Ohio Sept. 11, 2015) (Rose, J.) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Walden v. Fiore*, --U.S.--, 134 S. Ct 1115, 1122 (2014)). The Court must focus its inquiry "on the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S. Ct. at 1121 (citing *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 775 (1984)); *Dull*, 2015 WL 5308871, at *8. There must be an "'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919. The Court must examine "the defendant's contacts with the forum itself," not the defendant's contacts with

persons who reside there.  *Walden*, 134 S.Ct. at 1122.  The plaintiff "cannot be the only link between the defendant and the forum."  *Id*.  "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."  *Id*.  "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."  *Id*. at 1123.

Plaintiff argues that the exercise of personal jurisdiction over defendants comports with the Due Process Clause.  Plaintiff contends that defendants purposefully availed themselves of the privilege of acting in Ohio by entering into the Consent Agreements and Landlord's Waivers with plaintiff in order to assist their franchisee, non-party J&D, in obtaining an "Ohio loan" (Doc. 13 at 13, citing Doc. 3, Verified Complaint, ¶¶ 16-17, 22-23; Doc. 13-1, Exh. A., Paterson Decl., ¶¶ 3-5, 7-8, ¶ 13); by "repeatedly communicating with FFCC about their contractual obligations owed to FFCC in Ohio" (*Id*., citing Paterson Decl., ¶¶ 11-12); and by maintaining ongoing contractual obligations to plaintiff in Ohio (*Id*., citing Doc. 3-1, Exh. K, Consent Agreement, ¶ 4- requiring defendant JITB to provide plaintiff with written notice of certain developments).  Plaintiff argues that its Cincinnati office was the "corporate office of FFCC" responsible for all relevant decision-making relating to non-party J&D, the Consent Agreements, and the Landlord's Waivers.  (*Id*., citing Paterson Decl., ¶¶ 3-5).

The evidence plaintiff FFCC has submitted falls far short of satisfying constitutional due process requirements for the exercise of specific jurisdiction over either defendant.  Plaintiff has not shown that either defendant purposefully availed itself of the privilege of acting in Ohio by establishing 1) connections with Ohio that were sufficiently "substantial" or "significant" such that it should "reasonably" have anticipated being haled into an Ohio court, or 2) "continuing obligations" between the defendant and an Ohio resident.  *See Symbolstix, LLC v. Smarty Ears,*

*LLC*, 152 F. Supp.3d 1027, 1036 (N.D. Ohio 2015).  First, FFCC has not shown that either

defendant established "continuing obligations" with an *Ohio resident*.  As explained earlier in

connection with the Ohio long-arm statute analysis, the evidence here shows that FFCC is an

Indiana corporation with its principal place of business in New Jersey.  *See supra*, p. 23.

Plaintiff nonetheless suggests that defendants could anticipate being sued in Ohio because

plaintiff's franchise group is based here, and in making the "minimum contacts" determination

the Supreme Court has "looked to the location of the corporate office of the plaintiff that

controlled decision making authority over the relevant subject matter and to which relevant

communications were ultimately sent."  (Doc. 13 at 13, citing *Burger King*, 471 U.S. at 480-81).

In fact, though, the Supreme Court in *Burger King* looked to the plaintiff's principal place of

business and corporate headquarters, both of which were located in the forum state - Florida - in

determining whether the defendant had sufficient minimum contacts with the state.  *Burger King*,

471 U.S. at 464.  The Supreme Court also relied on several additional significant contacts the

defendant had with the forum state which made the exercise of jurisdiction over the defendant

presumptively reasonable in that case, specifically: the parties' "franchise dispute grew directly

out of 'a contract which had a *substantial* connection with'" Florida because the defendant

"deliberately 'reach[ed] out beyond' Michigan and negotiated with a Florida corporation for the

purchase of a long-term franchise and the manifold benefits that would derive from affiliation

with a nationwide organization"; "[u]pon approval, [the defendant] entered into a carefully

structured 20-year relationship that envisioned continuing and wide-reaching contacts with

Burger King in Florida," demonstrating his "voluntary acceptance of the long-term and exacting

regulation of his business from Burger King's Miami [Florida] headquarters"; and the

defendant's "refusal to make the contractually required payments in Miami, and his continued

use of Burger King's trademarks and confidential business information after his termination, caused foreseeable injuries to the corporation in Florida." *Id*. at 479-80. As discussed below, additional contacts of this type are lacking here.

Even assuming FFCC could be considered an Ohio resident for personal jurisdiction purposes by virtue of having an office and operations in Ohio, plaintiff has not cited evidence that shows defendants established continuing obligations with FFCC in Ohio. First, the evidence plaintiff cites relates primarily to plaintiff's connections with Ohio or pertains to non-party J&D. Paterson states in his declaration that the "de facto principal place of business for FFCC's franchise group" is in Cincinnati, Ohio; the individuals who were collectively responsible for approving plaintiff's loans to J&D were based in Cincinnati; every credit decision maker who was required to sign off on plaintiff's loans to J&D was based in Cincinnati; all of plaintiff's original loan documents that it receives from borrowers are housed in Cincinnati; Automated clearing house (ACH) payments for all of FFCC's loans originate from plaintiff's operations center in Springdale, Ohio; all funds drawn on plaintiff's loans and repaid by borrowers are debited from and deposited into FFCC's accounts in Ohio; and plaintiff's loan to J&D is managed entirely from plaintiff's Cincinnati office.[8] (Doc. 13-1, Exh. A, Paterson Decl., ¶¶ 3-5, 7-8, ¶ 13). This evidence shows that plaintiff FFCC has a connection with Ohio and indicates there is a connection between the loan plaintiff extended to non-party J&D and Ohio. However, these connections do not suffice for the exercise of personal jurisdiction over defendants. It is

---

[8] Plaintiff also asserts that the "corporate office of FFCC" that was responsible for all relevant decision making relating to the Consent Agreements, and the Landlord's Waivers was plaintiff's Cincinnati's office. (Doc.13, citing Doc. 13-1, Exh. A, Paterson Decl., ¶¶ 4-6, 9). Mr. Paterson's declaration does not state this. Mr. Paterson states that the individuals "responsible for approving FFCC's loans to J&D" were based in Cincinnati; every "credit decision maker who was required to sign off on FFCC's loans to J&D was based in Cincinnati, Ohio; FFCC's credit portfolio management associates are located in Cincinnati, Ohio; and "the employee who signed the Consent Agreements and Landlord's Waivers, Andrea Miranda, reported to FFCC's Loan Operations Group" based in Springdale, Ohio. (Paterson Decl., ¶¶ 4-6, 9).

imperative that the exercise of specific personal jurisdiction be based on the contacts that defendants themselves create with Ohio; jurisdiction cannot be premised simply on defendants' connections with plaintiff FFCC, which has an office and operations in Ohio, or with non-party J&D. *See Walden*, 134 S. Ct. at 1122. "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id*. at 1126; *see also Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*, 617 F. App'x 406, 408-09 (6th Cir. 2015). The above cited evidence does not show that defendant JITB or JITB Eastern Division created any contacts with FFCC in Ohio.

Further, plaintiff FFCC has not shown that either defendant had connections with Ohio that were sufficiently "substantial" or "significant" such that it should "reasonably" anticipate being haled into an Ohio court. Defendants' agreements with plaintiff FFCC considered in conjunction with non-party J&D's loan agreements cannot, standing alone, show that defendants had "sufficient minimum contacts" with Ohio to support the exercise of specific jurisdiction over them. *See Walden,* 134 S. Ct. at 1122-23 (quoting *Burger King*, 471 U.S. at 479) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot") (emphasis in original). Plaintiff alleges defendants established additional contacts by "repeatedly communicating with FFCC about their contractual obligations in Ohio" (Doc. 13 at 13, citing Paterson Decl, ¶¶ 11-12) and by maintaining ongoing contractual obligations to plaintiff in Ohio (*Id*., citing Doc. 3-1, Exh. K, Consent Agreement, ¶ 4 - requiring defendant JITB to provide plaintiff with written notice of certain developments). However, these contacts are insufficient to establish "minimum contacts" that comport with due process requirements. As discussed earlier, the Consent Agreement does not specify that defendants

were to provide notice to plaintiff in Ohio (Doc. 3-1, Exh. K, ¶ 4), and Paterson's declaration does not address who at FFCC was responsible for making decisions related to the Consent Agreements and the Landord's Waivers or where those decisions were made. (Doc. 13-1, Exh. A, Paterson Decl., ¶¶ 3-5).

Moreover, although plaintiff has submitted evidence that defendants reached out to Ohio by calling plaintiff's employees at Cincinnati telephone numbers and sending emails that they understood would be received and read in Cincinnati, this evidence is too vague to support a finding that defendants purposefully availed themselves of the privilege of acting in Ohio. (*See* Doc. 13-1, Exh. A, Patterson Decl., ¶¶ 11-12). Purposeful availment may occur when the defendant sends communications into the forum state and those communications "form the bases for the action." *Adams v. Karl*, No. 2:13-CV-894, 2014 WL 4243773, at *6 (S.D. Ohio Aug. 26, 2014) (King, M.J.) (citing *Schneider v. Hardesty*, 669 F.3d 693, 702 (6th Cir. 2012) (quoting *Intera Corp. v. Henderson,* 428 F.3d 605, 616 (6th Cir. 2005) (recognizing that purposeful availment prong may be satisfied when a defendant makes telephone calls and sends facsimiles into the forum state and those communications "form the bases for the action"); *Neal v. Janssen,* 270 F.3d 328, 332 (6th Cir. 2001) ("When the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment.")). However, as discussed in connection with the Ohio long-arm statute, plaintiff has not produced any evidence concerning the substance of the communications or the time frame during which they were exchanged. Thus, it is impossible to ascertain whether defendants' communications form the basis for, or are related to, plaintiff's causes of action. As such, the record does not permit a finding that defendants' communications with plaintiff's employees in Ohio constitute significant or substantial contacts with the state so as to satisfy the purposeful availment

requirement.  *See Wizie.com, LLC v. Borukhin*, 2:14-CV-10391, 2014 WL 2743375, at *5 (E.D.

Mich. June 17, 2014) (where the defendant's only contacts with the forum in addition to sending

payments there were emails, faxes, and phone calls, the contacts were fortuitous and attenuated

and made an exercise of personal jurisdiction over defendant unreasonable).  *See also MAG IAS*

*Holdings, Inc.*, 854 F.3d at 901 ("the issue is not the quantity, but the quality of a defendant's

contacts with the forum state") (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir.

2000) (finding that "the mere existence of a contract between [the defendant] and an Ohio citizen

for seventeen months is insufficient to confer personal jurisdiction over [the defendant]" and

construing language in *Burger King*, 417 U.S. at 479, to mean that "the parties' actions 'in the

negotiation and performance of the . . .  agreement' are more important factors to consider than

the duration of the contract in determining whether [the] case 'should be subject to suit in

Ohio'"; *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1301 (6th Cir. 1989) (telephone

calls and submission of draft contracts to the forum state were insufficient to establish purposeful

availment)).  Paterson's declaration statements regarding phone calls and emails the parties

exchanged are much too vague to support a finding that defendants purposefully availed

themselves of the privilege of acting in Ohio or causing a consequence in Ohio.

   Although the Court is unable to exercise personal jurisdiction if the purposeful availment

requirement is not satisfied, the Court will nonetheless briefly examine the other two elements of

the specific jurisdiction test established in *Mohasco Industries*, 401 F.2d 374.  Plaintiff argues

that "each one of FFCC's claims arises directly out of Defendants' contacts with Ohio -

specifically, its contracting with FFCC in order to obtain for J&D an Ohio loan, its interference

with that same Ohio loan, and its unlawful conversion of property that are [sic] properly the

assets of FFCC's Ohio operation."  (Doc. 13 at 14).  The allegations of the Verified Complaint

belie plaintiff's contention that its claims arise out of defendants' contacts with Ohio. In support of its breach of contract claims, plaintiff alleges that defendants breached Consent Agreements and Landlord's Waivers that they executed with plaintiff by attempting to foreclose on the Collateral, which is located in Texas, without notice to plaintiff; using or removing the Collateral from Texas restaurants without compensation to plaintiff or its permission; and seeking relief from the J&D bankruptcy filed in Texas to use, dispose of, or foreclose on the Collateral. (*Id.*, ¶¶ 50, 59, 61, 67, 69; Exhs. A-E, Schedule A). Plaintiff alleges in support of its unjust enrichment claim that defendants have retained and converted its Collateral, which is located in Texas. (*Id.*, ¶ 76). Plaintiff asserts that defendants have wrongfully removed, exercised dominion and control over, and wrongfully converted the Collateral, all of which necessarily would have occurred in Texas where the Collateral is located. (*Id.*, ¶¶ 84, 86). In support of its tortious interference with contract claim, plaintiff alleges that defendants intentionally procured J&D's breach of the promissory notes and Security Agreements by preventing J&D from selling the Restaurants located in Texas to pay FFCC on J&D's loans and by convincing J&D to surrender control and possession of the Collateral in Texas to defendants. (*Id.*, ¶ 92). Plaintiff alleges that defendants conspired as J&D's landlord and franchisor of the Restaurants located in Texas. (*Id.*, ¶ 97). Nowhere does plaintiff allege that defendants took any of these actions in Ohio, and plaintiff does not allege where its contracts with defendants were negotiated or executed. (*Id.*, ¶ 59, 67).

Plaintiff has not introduced any evidence beyond the Verified Complaint to show that any of the alleged wrongful actions giving rise to its claims occurred in Ohio. There is no evidence before the Court indicating that defendants negotiated or entered into any of its agreements with plaintiff in Ohio. Andrea Miranda signed each of the contracts on behalf of FFCC in her

capacity as Vice President of FFCC. (*Id*., Exhs. K, L, p. 5; Exhs. M, N, p. 3). Although she did

not provide either her address or FFCC's address in these documents, she listed FFCC's New

Jersey address when she signed Schedule A to the secured promissory notes as Vice President of

FFCC (Doc. 3, Exhs. A-E), and the New Jersey address appears to be the only address provided

for her in the record.

Further, plaintiff has not made any allegations or produced any evidence to show that

defendants took action in Ohio that interfered with the loans between plaintiff and non-party

J&D. The Collateral that is the subject of FFCC's conversion claim is located in Texas (Doc. 3,

Exhs. A-E, Schedule A), and the meaning of plaintiff's representation that this property is

"properly the assets of FFCC's Ohio operation" is unclear. (*See* Doc. 13 at 14). In addition,

plaintiff has not alleged facts or produced evidence to show defendants took any action in Ohio

related to the alleged conversion of the Collateral. Insofar as plaintiff seeks to rely on its

allegation that the effects of defendants' allegedly tortious conduct were felt in Ohio, defendants

have not supported this allegation with evidence. Notably, this Court has cautioned against

placing too much emphasis on where the impact of an intentional tort is felt. *Gold Medal

Products Co.*, 2017 WL 1365798, at *6 (stating that the Supreme Court in *Walden* "'rejected' the

theory that personal jurisdiction can be based on intentional acts taken outside a forum state

which the defendant knows will cause effects inside the forum state" and collecting cases). The

Court in *Gold Medal* instead focused on the absence of any direct contacts between the

defendant and Ohio giving rise to the plaintiff's tort claims to find that personal jurisdiction was

lacking. *Id*. For the reasons explained above, such contacts are likewise absent here.

Thus, the second element of *Mohasco Industries* is not satisfied. Given plaintiff's failure

to demonstrate that defendants had sufficient "minimum contacts" with Ohio "such that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" *Walden,* 134 S.Ct. at 1121, an inference that the exercise of personal jurisdiction over defendants is reasonable does not arise.  The exercise of personal jurisdiction over defendants in this case would not comport with the Due Process Clause.

## IV.  Motion to transfer venue

Defendants ask the Court to transfer this case to the United States District Court for the Western District of Texas under 28 U.S.C. § 1404(a) for the convenience of parties and witnesses and in the interest of justice.  (Doc. 6).  A case that has been removed from state court can be transferred under 28 U.S.C. § 1404.  *Nationwide Mut. Ins. Co*., 2009 WL 1850612, at *3 (citing *Bacik v. Peek,* 888 F. Supp. 1405, 1413 (N.D. Ohio 1993)).  However, as explained *supra*, the district court cannot transfer a case under § 1404(a) when it does not have personal jurisdiction over the defendants.  *Jackson*, 421 F. App'x at 483 (citing *Pittock,* 8 F.3d at 329); *Nationwide Mut. Ins. Co*., 2009 WL 1850612, at *3; *Dolce & Gabbana Trademarks S.r.L*, 2016 WL 8202008, at *6.  Because personal jurisdiction over defendants is lacking here, the Court cannot grant defendants' motion for transfer of venue under § 1404(a).

Nor can the Court transfer venue under § 1406(a), which applies only where venue is wrongly or improperly laid.  *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964); *Nationwide Mut. Ins. Co.*, 2009 WL 1850612, at *2.  Section 1441(a) creates the proper venue in a removal case. *Nationwide Mut. Ins. Co*., 2009 WL 1850612, at *2.  Thus, once a case has been removed to federal court, a party can challenge "the removal itself as improper, or as having been made to the wrong district court if the case was removed to a district court other than that 'embracing' the state court in which the action was brought, but one may not challenge venue in the district court

as of right, according to that district court's venue rules, as if the case had originally been brought there." *Kerobo,* 285 F.3d at 535 (citing 28 U.S.C. § 1441(a)).

In light of the procedural posture of this removal case, where venue is proper under § 1441 but personal jurisdiction is lacking, the Court cannot transfer venue under either § 1404(a) or 1406(a).

## V.  Conclusion

Plaintiff FFCC has not made a prima facie showing of personal jurisdiction under either the Ohio long-arm statute, Ohio Rev. Code § 2307.382, or under the Due Process Clause.  The exercise of personal jurisdiction over defendants therefore is not proper.  Because personal jurisdiction is lacking, the Court cannot transfer venue pursuant to 28 U.S.C. § 1404(a).  The Court likewise cannot transfer this case to another district under 28 U.S.C. § 1406(a) because venue was not wrongly or improperly laid in this Court.  The action should therefore be dismissed for lack of personal jurisdiction and plaintiff's motion for TRO/preliminary injunction should be denied as moot.

### IT IS THEREFORE RECOMMENDED THAT:

1.  This case be **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

2.  Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Doc. 6) be **DENIED**.

3.  Plaintiff's motion for TRO/preliminary injunction (Doc. 4) be **DENIED** as moot.

Date: <u>August 1, 2017</u>                              <u>s/ Karen L. Litkovitz</u>
                                                                        Karen L. Litkovitz
                                                                        United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

FIRST FRANCHISE CAPITAL                    Case No. 1:17-cv-397
CORPORATION,                                Dlott, J.
      Plaintiff,                          Litkovitz, M.J.

      v.

JACK IN THE BOX, INC., et al.,
      Defendants.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

      Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).